Welcome everyone to the 4th Circuit this morning. We're pleased to have you here and we look forward to the arguments in these three cases. The first case is Leibelson v. Cook. Ms. Friedman. May it please the Court. My name is Andrea Friedman with the Department of Justice and I represent the appellants and individual capacity defendants in this case, Correctional Officer Christopher Cook and retired Captain Doug Meyer. The District Court here erred in denying Meyer and Cook qualified immunity at summary judgment on Benjamin Leibelson's Eighth Amendment claims. In Harlow v. Fitzgerald, the Supreme Court explains that qualified immunity is intended to prevent insubstantial claims from proceeding to trial. And the Court noted the burden and distraction to government officials of trial and personal liability. And after extensive and lengthy discovery in this case, 19 depositions, tens of thousands of pages of document discovery, the denial of summary judgment to Cook and Meyer here simply lost sight of those basic principles of qualified immunity. So I'd like to begin my argument with the errors in the District Court's ruling on qualified immunity. First, by addressing the lack of any clearly established law as to the claim against Captain Meyer that he didn't do enough to address Leibelson's nonspecific complaints about dining hall seating. Second, I will address the entirely unsupported allegations against Officer Cook, the alleged 2-3 second touching during a routine and authorized visual strip search in the special housing unit. And lastly, I'll turn to the alternative basis for reversal as to the claim against Meyer, which is the expansion of Bivens to the novel dining hall claim here, despite the Supreme Court's recent decision in Ziegler v. Abbasi. Well, does the Bivens analysis come at the inception or does it come at the conclusion? You seem to be suggesting it comes at the end. No, it is an antecedent question here, but the Supreme Court has said that you can rule on qualified immunity without reaching the Bivens question if that is the easier way to go. But the Supreme Court has said that it is an antecedent question whether or not Bivens remedy exists at all in these cases. These are all qualified immunity appeals. Normally we're limited to the qualified immunity issues. Sounds like you're trying to stretch this into a bunch of other things. No, this is directly related to qualified immunity as to both Captain Meyer and Cook. These are interlocutory appeals? Correct. Or an appeal. It's one appeal, right? Correct. Interlocutory appeal as to qualified immunity claims by two federal officials. Correct. But the Supreme Court has said that the issue of special factors and whether or not to extend the Bivens remedy is so intertwined with the merits of the case of qualified immunity that it also can be addressed on interlocutory appeal. And that would be in Wilkie v. Robbins and also recently in Hernandez v. Mesa when they remanded the issue back down to the Fifth Circuit, which was decided the same day as Abbasi. So starting first with the Meyers entitlement to qualified immunity here. As an initial matter, Liebelson failed to carry her burden. Meyers was a warden? He was a captain at the time and then he was also serving as the acting associate warden during the relevant period. Associate warden. Correct. So he was a pretty high-ranking officer at prison at the time. And this was a prison over Raleigh County, Beckley. Yes, correct. And Liebelson, it's important to note, Liebelson actually abandoned the Eighth Amendment claim in opposition to Meyers' motion for summary judgment. In the opposition brief, Liebelson stated, and I'm quoting from the brief, Plaintiff Liebelson is asserting a single equal protection claim against Meyers, not an Eighth Amendment claim. Is that, so you're saying that they abandoned the claim? Correct. Well, that's not qualified immunity. That's abandonment. Well, Liebelson has a burden of proving a constitutional violation. But you can only appeal a qualified immunity denial. Right, but she has to, the first prong of qualified immunity is whether or not there's a constitutional violation. But regardless of the abandonment issue, Your Honor, there's also the fact that the district court failed to really address what the clearly established right here. She defined the right at too high a level of generality, which is a classic error that the Supreme Court has repeatedly said is not appropriate. She cited only the broad standard under the Eighth Amendment for deliberate indifference claims. And that's just not sufficient here. The Supreme Court has repeatedly stressed the need to define a clearly established right with specificity. One example, recent example, is White v. Pauley, where the Supreme Court said that courts must identify a case where an officer under similar circumstances was held to violate the constitutional right. And this court has said the same. In Trulock, this court explained that a clearly established right has to be defined at the level of its application to the specific conduct being challenged. And here, there's no constitutional right that's clearly established. There's no existing case law that's under similar circumstances to what's alleged here. There's no right to a special dining hall table in the prison. And there's no case defining the constitutionally adequate response to general complaints from inmates having nowhere to sit in the dining hall. And I also want to note that it's important to note this is not a case where a correctional officer or Captain Meyer is alleged to have done nothing or completely ignored any sort of specific threats that Liebelson brought forward. Liebelson herself testified at her deposition that when she approached Meyer in the dining hall with a complaint, Meyer responded that he would refer her complaint to the Special Investigative Service at the prison to look into her allegations. And when Liebelson sent an email that Meyer received requesting a special LGBT table, Meyer forwarded that email to the Prison Rape Elimination Act coordinator at the prison because he believed that she was in the best position to assess Liebelson's complaint and what an appropriate response would be. So, this isn't a refusal to serve Liebelson food or to provide Liebelson food. This is a claim essentially that Meyer didn't do enough to respond to Liebelson's nonspecific complaints. And it's not clear what would have been enough, what would have satisfied the district court in terms of what was constitutionally adequate. The court acknowledged that Captain Meyer did not have the authority to add a special dining hall table at the prison, but suggested he could have taken some sort of other actions. But we don't know what those other actions would be. This is exactly what qualified immunity is for, to avoid this kind of judicial second-guessing. The Supreme Court especially has noted the importance to give wide deference to prison administrators. They're in a difficult position. They've got a diverse inmate population with varying needs, and they have to be concerned with safety and security of the entire institution. And day-to-day operations of prisons and problems that arise are just not susceptible to easy solutions, which the Supreme Court has said repeatedly, notably in Bellevue-Wolfish. So, absent any case law under similar circumstances, the answer here is that there is no clearly established law that what was alleged against Captain Meyer amounted to a constitutional violation. With respect to Officer Cook, the district court erred on qualified immunity for two reasons. First, there's no clearly established law that this two- to three-second touching through the food trace line of a— Before you get into the merits of the qualified immunity, as I understand it, the jurisdiction of this court to consider on an interlocutory basis qualified immunity is when there is an abstract question of law. I know you characterize it in your briefs as such, as whether this is an appropriate cavity search. It seems, however, when you look at your briefs, you're really more arguing about the record and whether there's an adequate record to create a genuine issue of material fact. I didn't see any—and I'm concerned about our court's jurisdiction in this case, given the nature of the appeal. Can you address that question? First, this court certainly has jurisdiction to consider whether or not it's clearly established that the alleged two- to three-second touching during this routine visual search is a violation of clearly established law. But that's not really your argument. I mean, your position in the case is that this never happened and there's no record or no adequate record. So it seems to me like you're creating a legal issue to create an appeal where the argument really is that there's not a sufficient question of fact to deny a motion for summary judgment. No, Your Honor, because while Johnson v. Jones says that evidence sufficiency is not appropriate on qualified immunity, there is an exception that was carved out by the Supreme Court in Scott v. Harris, which is where the record is blatantly contradicted. And it's a narrow question. But that was a video where the event in question was videoed in real time. And your argument here is that it's not probable or plausible or various things. But that's—we don't have the same sort of evidence that we had in that case, I don't think. We don't have a videotape, but I don't think it's fair to categorize Scott v. Harris as a videotape case. And we're really asking the court to consider a narrow question here, which is not evidence sufficiency but the complete absence of proof. Well, what if there is—just take the opposite situation and assume that it's undisputed. Just assume for a minute that it's undisputed that this two- to three-second sexual assault did occur. What would be your position on why it wasn't clearly established law? We don't— But this is a constitutional violation. There is case law in the district court. There's not a ton of case law out there addressing similar circumstances. But there is case law in the district court where what they refer to as incidental touching during what's an authorized and routine visual search is not a constitutional violation. Right. I'm talking about the violation as described. I'm not saying whether it occurred. I agree with you. There are a lot of inconsistencies and all that. And Judge Quattlebaum's making the point that we're not here to resolve the facts. So assume for a minute that there was a two- to three-second penetration of this woman by the guard when it had nothing to do with the visual search. What is the clearly established law that says that that was not a—I mean, where is the absence of clearly established law? In other words, how does the constitutional question and whether it's clearly established play out under that undisputed hypothetical factual scenario? Well, so I noted that in—I believe it's Gallagher v. Codfeller, which was out of the Eastern District of Virginia, and affirmed by the circuit that the court held there was no violation of a constitutional right where the inmate alleged that a guard touched his anus during a strip search. And that just—it wasn't enough because there was no physical injury, no serious— Well, this wasn't a touching. This was a penetration. It was a penetration for at most two to three seconds, if you assume that that's true. Are you accepting—accept the facts that Judge Keenan— Right. This is the hypothetical. We're not talking about a mere touching. We're talking about a penetration. Why isn't that kind of sexual assault—in other words, a penetration that was not required for a visual search— why isn't that a clearly established constitutional violation? Because there simply is no—there was no case law cited by the plaintiff or the district court to suggest that that was a violation. I—it's our position that labeling it a sexual assault was incorrect and that that is a conclusion. Well, if he had raped— You have to look at the allegations. If he had raped Liebelson, would that have been a— Yes, absolutely, Your Honor. Okay. So you're saying that it's because it's digital penetration and not penetration with a sexual organ that it could not have been a constitutional violation? No. No, Your Honor. That's not—that's not the issue. Okay. Well, then what— This is really amounting to what I—what I refer to as an incidental touching. But, again, I would want to—I do want to go back to your question about— You want us to find it was an incidental touching. You want us to find the facts for you. See, and that goes back to the question that was posed earlier. Aren't you arguing the facts? And you said—when you did that, you said a second ago there's an absence of proof. Yes. And, well, testimony of a plaintiff is proof. It's evidence. It may not be enough to carry the day in front of a jury, but it seems like you disregard evidence because you think there's more of it on the other side. And you may be right, there's more of it on the other side, but that's not our job, I don't think, in this case. Well, I would—I would argue that it is your job here because there is a— It's our job to decide the facts for you? No, Your Honor. What I mean is that— We have to take the facts in the light most favorable to the plaintiff, and so do you. Correct. So accept the facts in the light most favorable to the plaintiff. But the Liebelson— This is what happened, what Judge Keenan described. But Liebelson's testimony with respect to this alleged two, three-second touching was contradicted in the record repeatedly. That's for jury to decide. Well, the— The plaintiff can make the case by testifying to what happened. And he can deny it. That's what they call a swearing match. And lots of cases go to the jury on a swearing match between witness A and witness B, and the jury has to decide. I would—I don't think that this is a swearing match because I think that the evidence is overwhelming, that this allegation just isn't—isn't plausible. I refer the court to the counterintuitive nature of a correctional officer risking their safety to stick their arm through the food tray slot. The implausible—the physical implausibility, if you look at the— I think Judge Kleinelbaum wants to ask you something. Yeah, let me—let me ask you to deal with a separate issue on the Cook case. I mean, you said there's an antecedent issue about the viability of a Bivens K claim in—with respect to the Meyer claim. Have you abandoned the argument that there's a question about the viability of a Bivens claim with respect to Cook? We did not raise the issue, Your Honor. You know, the qualified immunity—or, excuse me, the special factors consideration, although it may be a new context, there also have to be special factors. And we just—we did not see—we see that as more of a damages-or-nothing scenario that wasn't present with respect to the claim against Captain Meyer, which was—regarding ongoing conduct and was much more susceptible to potential equitable relief or the use of the administrative remedy process. I'm sorry. I'm sorry. No, I appreciate it, and I appreciate you answering my question. But the district court did not do a special factors evaluation on the Bivens claim in—at the trial court level, correct? No, the court did—the district court did do a special factors analysis and found it was a new context with respect to Captain Meyer. I'm talking about with respect to Cook. Oh, no. The court did not do that with respect to Officer Cook. Thank you. And I believe my time is up, so I'll reserve the rest of my time for rebuttal. Thank you very much. Mr. Fine. Thank you, Your Honor. And may it please the Court, my name is Bruce Fine, and I'm representing Michael Liebelson. He's the administrator of the estate of Benjamin Liebelson, who died during the pendency of this litigation. Your Honors, I'd first like to address the question of the limited nature of this Court's jurisdiction on interlocutory review of a qualified immunity defense. It's an irregular procedure, ordinarily to avoid piecemeal litigation, non-final judgments of district courts go to the jury before it comes up to this Court. And I think it's quite clear in the Johnson case, the United States Supreme Court held that an interlocutory review was not available to second-guess evaluations of the factual record by a district court. But the Supreme Court in Wood v. Moss and this Court in Tobey have allowed the evaluation of the viability of a Bivens claim as an antecedent issue in connection with a qualified immunity interlocutory appeal. So you don't dispute that, do you? No, I don't. You're really talking about the Cook claim? Yes, sir. And I believe in part the Meyer claim. Let me read to you, if I can, from the district court's decision explaining why she believed that the factual record justified going to trial. And this is on page 5 of our brief. And she writes, A reasonable juror resolving factual disputes and credibility determinations in Ms. Leibelson's favor, as the presiding judge noted, could find that Officer Cook violated her right to be free of cruel and unusual punishment by sexually assaulting her. And then it's a well-established sexual assault constitution that an Eighth Amendment violation goes on. But she made a factual determination based upon the record. A reasonable juror could find in favor of the plaintiff. And as regards Captain Meyer, and this is at the bottom of page 5, you know, the Eighth Amendment, and I think this comes from Farm River Brennan, requires prison officials to provide humane conditions of confinement, including adequate food, goes on. And she describes the legal standards then said, On the factual record, Mr. Leibelson would either go hungry or face sexual abuse from her fellow inmates. The case law regarding deliberate indifference to inhumane conditions was well-established at the time. Captain Meyer failed to address Ms. Leibelson's factual inability to eat in the dining room without risking sexual assault and thus does not qualify for qualified immunity. So I think on the factual record here, as found by the district court, and as this court said in Hensley and Price, which has really foreshadowed Johnson, that the district court's factual findings are taken as given by this court, which is limited to reviewing pure questions of law. And in that context, this court cannot second-guess the district judge, as the appellants would have it, and say, Well, Ms. Leibelson was just arguing about a separate dining table. It wasn't really a dispute over whether she could eat at all in the dining hall or risk sexual assault. The district court found that there was a factual record that justified a jury in finding that Ms. Leibelson needed to choose between food or risking sexual assault. Assume we think there is a legitimate basis as a question of law on the Meyer claim. Yes. And assume we believe we can look at the Bivens claim in connection with an interlocutory appeal for qualified immunity with respect to the Myers claim. I understand Carlson is an Eighth Amendment claim, but it seems hard to square the notion that this doesn't involve a different context than what was involved in Carlson. Yes, Your Honor, you are correct, and the district court acknowledged that. So you agree that it is a different context and the special factors should apply, correct? Yes, and I believe the district court did go through that catechism. Yes, they did. With respect to the special factors, the relevance of the Prison Litigation Reform Act, which came about after the Carlson decision, and where Congress actually provides how causes of action for prisoners in many cases can be brought. Yes. It seems like we're getting into a pretty clear separation of powers issue where Congress has addressed this issue, provided certain remedies and restrictions on claims, and you're asking us to extend Bivens in a way that arguably has already been considered by Congress. No, excellent question, Your Honor. I believe the court has, the U.S. Supreme Court has said when Congress wants to displace a Bivens claim, it would expressly note that its statutory remedy is a substitute, and Congress hasn't done that. Certainly not the Prison Litigation Reform Act applies to suits initiated by prisoners. I was there at the time. I worked with Senator Jesse Helm. They were worried that the courts were being flooded with litigation because prisoners were idle in their cells. They could think up anything imaginable to get a trip to the courthouse and dispel the boredom or ennui of prison conditions. That's not this case. The issue isn't whether this is the same. You may be right. I appreciate that perspective, but part of the issue is whether Congress, it's not just whether they provided a sufficient form of relief. It's whether they considered the possibility of relief and elected not to provide it. Well, I believe that even in the prison litigation reform context, on the facts of this case, it would not be a substitute. For example, the exhaustion of administrative remedies. Here, the athlete made an administrative remedy about being unable to eat the dining hall without risking sexual assault by the other inmates. That was not investigated at all. There was no exhaustion. They just refused to entertain and make an investigation of that allegation. This is not a case of trying to circumvent the clear congressional preference that you exhaust administrative remedies first, although in 1983 litigation, the Supreme Court has held exhaustion in general is not required. So here, there was an attempt to exhaust and nothing happened. The second element here that comes into play with regard to the prison litigation reform. Remember here, the plaintiff here, Ms. Liebelson is transferred to McDowell out of Beckley where the problem arose at the end of March, which is a very short time after these incidents occurred. So there's no way you're ever going to get injunctive relief. He's now inhabiting a different institution. How is he going to argue that the same thing could occur there? Because he's not complaining about depriving, being deprived of food at McDowell. So there isn't a way in which absent damage remedy, you could have any redress for this problem. It seems like your position assumes that unless there's adequate relief, the equivalent or substitute of a Bivens case, that that factor doesn't apply. As I read the law, sometimes other remedies, even if inadequate or less than a Bivens case, indicates that Congress acted and limited the types of relief that can be had. Well, Your Honor, I believe it's a totality of circumstances test. I don't think this one factor is dispositive. And I think that in the totality of circumstances here, I don't believe that Congress is saying, well, even when you do have an Eighth Amendment viable claim that if he stayed at Beckley, now it's vanished because he's at McDowell and it's too late. And they want to minimize prison litigation. I'm sorry. Excuse me. I just want to say, because I do believe a very substantial motivation behind the Prison Litigation Reform Act was they didn't want frivolous suits to overwhelm the courts. There's no incentive for an inmate who's long gone from the prison context to concoct a suit and say, well, years afterwards, he's got to be within the statute of limitations. We want something here to be redressed because I want a trip to the court. I think, yeah, our plaintiff, the last thing our plaintiff ever wanted to see again was Beckley. When we even talked about a deposition in the neighborhood, he almost went traumatic. And so the deterrent effect of frivolous prison litigation simply isn't at work here. Okay. That was a long sentence, Mr. Fine. Sir, I have a question about also regarding the claim against Meyer. And my concern, one of my concerns is whether the district court appropriately enlarged the claim, made it stronger. In other words, the district court took your claim and really turned it into a constitutional claim, didn't it? As articulated, your claim was a deprivation or inadequate and safe access to food. And the district court elevated it to this constitutional violation. And is that appropriate? Well, Your Honor, I mean, I think that the factual allegations that form the basis for the Eighth Amendment claim were the same factual allegations. But can a court reframe? Yeah. Can a court? Well, really, it's reframing the issue. Now, I understand, you know, you're in litigation. But I don't think that there's any argument of prejudice to the other side in defending. Notice, Your Honor, that the appellants, they never filed a motion for reconsideration and said, hey, you know, you sprung on an Eighth Amendment claim. We thought it was an equal protection claim. But the gist of the facts that made up the Eighth Amendment claim, namely that we had alleged that Ms. Leibelson was required to choose. So you're saying that you're saying then that if you go in with an equal protection claim and the court essentially elevates it or enlarges it, that that's OK? Your Honor, I think that I'm not sure enlarging or strengthening is the right, it's recharacterizing it. So the court can change. She didn't add allegations into. Right. But the court can change your legal theory then, essentially. Isn't that what happened? You keep talking over me, Mr. Fein. I apologize. Only one of us can talk. So if you'd be kind enough, just let me finish the question, and then I'm very eager to hear your answer. So can the court reframe your claim? That's my question. And you say yes. To me, this is pretty unusual, what happened, reframing a litigant's claim and turning it into a different claim. I think it is unusual. Your Honor, I wouldn't be categorical. I think a critical element here is prejudice, you know, to the side. Is this a surprise that they didn't have an adequate chance to defend? Because we're not going back to common law forms of pleading trespass on cases, things like that. The overarching purpose, according to the federal rules, is to do justice. That doesn't mean you can wholly transform a claim that goes from Jekyll to Hyde. So it's a matter of degree and whether there was anything that was unfair that prejudiced, you know, an opportunity to litigate the matter. And with regard to... What do you say we should do with this appeal on Myers then? Are you asking us to dismiss it and say there's no jurisdiction? Are you asking us to affirm? Well, we're asking you to say that there is no jurisdiction here to re-evaluate the district court's conclusion that there was factually sufficient evidence to go to a jury as to whether Ms. Leibelson... You're saying it's not an appealable order on that issue? That is right. You have to take... So it has to be dismissed? No. Well, if it's not an appealable order, it has to be dismissed. We only have jurisdiction on claims of qualified immunity. Yes. It's limited, as you got up there and said at the beginning. I'm just trying to figure out what you want us to do. If you claim that this was an inappropriate appeal, what do you want us to do? Well, I think, Your Honor, you can have more than one avenue of appeal. Some issues may be right for interlocutory review. Others are not. I think Johnson is saying... Well, the only issue we can have here is qualified immunity. Yes, and insofar as qualified immunity... They get a shot at claiming a qualified immunity before they can go to trial. Right. And there's a jurisdiction for that. So is there jurisdiction or not? We think that there is no jurisdiction here to determine whether or not there are sufficient facts for a jury to find that Ms. Liebelson was required to choose between basically sexual assault or food. And you're talking about as to the Myers claim. That's the Myers claim. There's two claims here. Right. Myers claim and the Cook claim. Cook claim, we think you automatically dismiss it. We don't think that there's any foundation even entertaining the appeal. That there's no jurisdiction? It's simply an argument of the facts. You say there's no jurisdiction for the appeal on the Cook claim. Correct. All right. But I do think that the issue that the district court confronted with regard to Meyer, whether or not an extension, which she accepted of Carlson, new factors beyond what the Bivens case law in the Supreme Court was, was appropriate here. And she did apply the test whether you believe it was rigorous enough. That issue is properly before this court as a matter of law. Is there a Bivens remedy in the circumstance where a prisoner has to choose between sexual abuse or food? That is before the court. Do you agree that the district court did not apply the special factors test to the Cook claim? Yes, Your Honor. Okay. So, Mr. Fine, in your brief, you were asking us to affirm. Now it sounds to me like you're asking us to dismiss in part with regard to Cook. Yes. I think that would be correct insofar as there's jurisdictional language would be dismissing the appeal as was done with regard to the attempt to appeal the docketing. You're only asking us to dismiss as to the Cook claim. Yes, that is correct. I do believe this court has jurisdiction to decide whether or not the extension of Bivens to the new facts. I don't think I've characterized your position on the Myers claim as having abandoned the claim. They say you, on the Myers claim, you abandoned it. Well, we obviously. The optimum claim, you abandoned it. I think this goes back to Judge Keenan's questions. Ms. Friedman just got up here and told us. Yes. Well, I think this goes, Your Honor, to Judge Keenan's questions relating to the judge recharacterizing the allegations that we made as not in equal protection. I think that's probably right. I just wanted to make sure you got a fair shot at what she said. Yes. She said what you did on the Myers claim was you abandoned it. Well, I don't know whether we abandoned the claim. We obviously didn't abandon it in the eyes of the district court because she recharacterized it, and that's one of the reasons why we're here on appeal. So the district court didn't accept that characterization. Otherwise, I wouldn't be before you. Yes. What about the Cook claim, then? Is there anything more you want to say about that? No. Except we ought to dismiss it. We ought to dismiss it. We believe- Why don't we have jurisdiction? Because the court said that- Qualified immunity was denied. Because- Qualified immunity was denied, and under the case law, they have a right to appeal on an inlocutory basis, pretrial, a claim of qualified immunity that was denied. Not in all circumstances, Your Honor. I think this court and Hensley and Price in the Supreme Court in the Johnson case said when the denial is because the district court finds there's sufficient factual record to go to the jury to decide whether the foundation had been laid to conclude that there was or not a violation of a clearly established constitutional right, in those circumstances, you have to go to trial. You're not- If there's a factual situation that creates a right to a trial, we lack jurisdiction. Correct. Okay. If we- The government argues, or the defendant, not the government, the defendants argue that it's a legal question and that's something we have to decide. Assuming just for hypothetically we were to agree with them, do you think that we would have the right to look at the Bivens claim in Cook just like we would in Meyer? Well, I think it's very hard to argue that to grant damage remedy for sexual assault is an extension of Bivens. Just because the sexual assault never occurred in these particular circumstances, you're extending what Bivens had already established. I mean, that's a different question. You're saying it wouldn't be an extension. My question is do we have a right to consider that if we were to agree with the government that the qualified immunity issue really is a legal matter for which we would have jurisdiction? Yes, Your Honor, if that's how you wish to characterize it. It should be subject. Form shouldn't exalt substance. You can in some sense characterize every factual issue as legal if you say there's zero evidence at all whatsoever and so as a matter of law you can't go to the jury. But that's not what the district court found. I think my time is up, but thank you, Your Honor, and I apologize for interjecting with Judge Keenan. Thank you. Thank you, Mr. Fein. We appreciate it. Ms. Friedman? So I wanted to begin again discussing the jurisdiction question because I understand you guys have a lot of questions about that. That's pretty important. Yes, and I think it's important to take a step back and take a look at what the consequences here of where there's a complete absence of proof other than the plaintiff's bare allegation. Are you talking about the Cook claim? You're focused on Cook. There are two claims here. Correct. So specifically with respect to Cook. If every inmate or every plaintiff was allowed to merely make an allegation and then the I think that, you know, permitting this claim to go to trial would frustrate not only the purpose of qualified immunity, but Rule 56 in summary judgment. Of this court in Felton. So you're saying the plaintiff can't make a primathesia case with her own testimony? Correct. Okay. And not only because they were in case. That's raising a... That's a legal question. Well... And... We instruct juries all the time. I think it's pretty settled. The court instructs juries all the time that the testimony of one witness, if believed, can be sufficient. But here we're talking about... This is a narrow question and not just whether evidence sufficiency or whether you... Or a credibility issue. But just a complete absence of proof other than this bare allegation from Liebelson. It's an allegation. It's a testimony. It's evidence. Taken in the view... In the light most favorable to the plaintiff, you believe the testimony that supports the plaintiff. Sure. But she offered testimony of this allegation. But then there's also record evidence that she alleged that she was... She told her treating psychiatrist during the pendency of this litigation that she was held down by multiple guards and raped. She told a psychiatrist before she filed this lawsuit that the sexual assault she suffered at FBI Beckley was... And you can argue all that. You can present that to the jury if it's admissible and argue about it. But... You can say she was not a credible witness. The Supreme Court in Anderson v. City of Bessemer... But you want us to change the law. No, Your Honor. You want us to say that the testimony of a single witness doesn't make a claim. Well, I point the court to Anderson v. City of Bessemer where the Supreme Court said that a district court can't merely label something a credibility issue when the... Where the allegations are unsupported in the record or there's inconsistencies in the record. And this court in Felty has noted that there is an affirmative obligation on the part of... On part of courts to prevent factually unsupported allegations from going to trial. And I directed the court to... Is there anything special about the proposition that the witness is a prisoner? That undermines their credibility for purposes of our evaluation? Not necessarily. I think bald allegations... Not necessarily. I think the answer is no. Okay. Well, then no, Your Honor. I think it is. That's what... I think any plaintiff who merely makes an allegation and then the record is devoid of any additional support for that allegation, that as a matter of law would not get you past summary judgment. I mean, that's why we have summary judgment here, to prove your case. And there was ample discovery in this case... But judges on summary judgment can't believe one side or the other. They have to evaluate the facts, taking the view in the light that was favorable to the non-moving party. That's what the principle is. Well, I'll just... I'll end this discussion by pointing to the Second Circuit's decision in Jeffries and the recent decision in Gonzales v. Hastie, which we submitted in a 28-J letter to this court, which I think further addressed the issues that we are bringing up with respect to jurisdiction for Officer Cook and his entitlement to qualified immunity. Turning with respect to Captain Meyer and the jurisdictional question, regardless of the abandonment question and whether you think there's jurisdiction for that, we are arguing that there is no clearly established law that what was alleged here was a constitutional violation. This is not... Again, this is not a case where Liebelson has alleged that Meyer denied him access to food. This is an allegation that an inmate approached Meyer with a general complaint with no specifics about who was threatening her or who was allegedly harassing her, and that his response, which was to refer the matter to the PREA coordinator and to tell Liebelson that this would go to the Special Investigative Service, that that was not enough. Just because Liebelson did not get her special dining hall table does not create a constitutional violation here or a violation of clearly established law. And then lastly... And is there anything... The plaintiff was suggesting that somehow we're not, I think, allowed... We don't have jurisdiction to consider the Constitution, whether there was a clearly established constitutional right. It seems like that's the very issue that the precedent allows us to consider in a Bivens case. Correct. And I would tell you that that is black letter law, that whether or not there's a clearly established violation of a constitutional right is the essence of jurisdiction for this court on interlocutory appeal. And then just lastly, briefly, with respect to the special factors analysis, I wanted to point out that the district court declined to extend the equal protection claim against Captain Meyer that was based on the same alleged conduct and noted special factors, the same special factors we note with respect to the Eighth Amendment claim, but confusingly extended Bivens under the Eighth Amendment claim. And we don't understand any... There's no way to reconcile that difference here. Those special factors apply equally with respect to the Eighth Amendment claim. And the special factors standard here, it's a low bar. It's caused the court to hesitate. And the question, again, is who should decide, Congress or the courts? And the answer is the courts. Thank you. Thank you very much, Ms. Friedman. We'll come down and read counsel and then take up the next case.
judges: Robert B. King, Barbara Milano Keenan, A. Marvin Quattlebaum Jr.